# ANNIE FERBER v. STATE BANK OF PINE ISLAND.[1]

December 15, 1911.

Nos. 17,397—(100).

*Action to cancel mortgages — fraud — charge to jury.*

In this action to set aside certain notes and mortgages on the ground of fraud, it is *held:*

1. That the evidence sustains the answers of the jury to special questions submitted.

2. Certain questions asked and remarks made by counsel during his cross-examination of a witness, no objections being made thereto at the trial, are not ground for reversal.

3. There was no error in the court's instructions to the jury.

Action in the district court for Goodhue county to have certain notes and mortgages canceled, to annul all proceedings to foreclose the mortgages, and to declare the mortgages to be not a lien upon certain land, and to have them declared void on account of usury. The substance of the pleadings is given in the opinion. The case was tried before Johnson, J., and a jury which answered the five questions submitted to it in the manner stated in the opinion. From an order denying defendant's motion to vacate and set aside the verdict and findings of fact and the answers of the jury, it appealed. Affirmed.

*D. C. Sheldon* and *Mohn & Mohn,* for appellant.
*A. J. Rockne* and *W. A. McDowell,* for respondent.

BUNN, J.

This action was brought to set aside two mortgages and the notes secured thereby, made by plaintiff and her husband to defendant April 15, 1908. The complaint charged in substance that Loomis F. Irish, the president of defendant bank, was acting as her adviser in the settlement between herself and her brother of their rights

[1] Reported in 133 N. W. 611.

in the estate of her father, and induced her to make the notes and mortgages by representing that it was necessary in order to carry out the terms of a settlement that he had arranged; that plaintiff received no consideration, and was ignorant of the fact that the papers she signed were mortgages. The answer denied that defendant was acting as the adviser or attorney of plaintiff, denied any representations, trick, or artifice, and alleged that the notes and mortgages were given to secure an indebtedness of plaintiff's husband to defendant. The case was tried on these issues, and special questions theretofore framed by the court were submitted to the jury and answered in plaintiff's favor. Defendant moved to set aside these answers and for a new trial. The motion was denied, and defendant appealed from the order.

Respondent's motion to dismiss the appeal is denied. Buzalsky v. Buzalsky, 108 Minn. 422, 122 N. W. 322.

1. The main contention of defendant is that the answers of the jury to the special questions submitted are not sustained by the evidence. Following is an outline of the facts as they appear from the record:

Plaintiff was a married woman, who had lived all her life in the vicinity of Pine Island. She had no experience in business matters. She was the daughter of a farmer, who died August 18, 1907, intestate, and the wife of George Ferber, who at the time of the transactions involved was a saloon keeper in Pine Island. Plaintiff and her brother, with their mother, were the heirs of the deceased, and difficulty arose between them relative to the division of their father's estate. Loomis F. Irish was the president and owner of substantially all of the stock of defendant bank. He had been a banker in Pine Island, and had known plaintiff and her father for twenty years.

On September 21, 1907, Irish called at plaintiff's home, and procured her signature to a note for $1,500 and a mortgage covering an undivided one-third of the real estate owned by plaintiff's father at the time of his death. Plaintiff testified that Irish stated that he would help her settle the disagreement with her brother, and asked her to sign the note, so that he could show her brother that

"he had something against me;" that the note would amount to nothing, and would be returned at any time plaintiff wanted it. Irish flatly denied making such statements, and testified that the note and mortgage were given to secure a then existing indebtedness of George Ferber to the bank on notes and overdraft and a further sum to be advanced him. Irish claimed that plaintiff had signed the prior notes with her husband.

Plaintiff and her brother did not reach an agreement as to their differences, and plaintiff did not see Irish again in regard to the matter until April 15, 1908. Irish prior to this time had written to her brother, requesting him to call at the bank. He called April 15, and agreed to a proposition of settlement that Irish outlined to him. The brother then went to the office of the bank's attorney, where he met plaintiff and her husband, whom Irish had telephoned. The terms of the settlement were read over. They had apparently been reduced to writing before the meeting. The property of the deceased father was to be divided, so that the plaintiff and her brother would own their shares in severalty. Plaintiff's share was a certain eighty-acre tract. Deeds were executed by the parties to carry out the terms of the settlement, and Irish then requested plaintiff to come into the bank. Upon her arrival there Irish presented for her signature the notes and mortgages to set aside which this action was brought. Plaintiff testified that Irish stated to her that it was necessary for her to sign these papers in order to hold the land she had acquired by the settlement. Irish denied any such statement, and claimed that the $2,000 note and mortgage was to take up the $1,500 note and mortgage of September, 1907, with interest, amounting to $85.25, to cover a $300 note, with interest, of George Ferber, Gust Adler, and Ed Adler, taxes paid, registry tax on the two mortgages, attorney's fees for drawing the mortgage, expenses of recording, bills for light, and a deposit in the bank to the credit of George Ferber for $57.24; all of these items making a total of $2,000.

The $2,000 note drew five per cent interest. The other note, also secured by a mortgage, was for $1,000, and represented an additional five per cent interest on the $2,000 note. This note was pay-

able, $100 on April 15 of each year for ten years, with interest at ten per cent on each payment after due until paid. It contained a clause giving the holder the right to declare the principal sum due upon default in payment of any instalment. July 12, 1909, defendant, having declared the entire principal sum due for a default in payment of the instalment due April 15, 1909, began proceedings to foreclose the mortgage, which resulted in a foreclosure sale to defendant for the sum of $819.35.

The jury found, by the answers to the special questions submitted that:

1. Irish, at the time the note and mortgage of September 21, 1907, were executed, was acting as plaintiff's adviser in the settlement of her father's estate.

2. Such note and mortgage were executed by plaintiff to aid Irish in effecting such a settlement.

3. At the time of the execution of the notes and mortgages of April 15, 1908, Irish was acting as plaintiff's adviser in the settlement between her and her brother.

4. Irish represented to plaintiff that the notes and mortgages were papers necessary to complete such settlement; and

5. Plaintiff was moved to execute the notes and mortgages solely by reason of such representation.

We are of the opinion that each of these findings is sustained by the evidence, within the familiar rule that must be applied where the testimony is conflicting and the trial judge has approved the action of the jury. If the jury believed plaintiff's testimony, the answers were clearly compelled. We are not prepared to say that her testimony was so improbable or opposed to the uncontradicted evidence as to be unworthy of belief.

It is admitted that she mortgaged land of which she was the sole owner, without receiving one dollar of money. Not only is this true, but she consented, if her story is not true, to most burdensome and extraordinary conditions and terms. The jury was fully justified in refusing to believe that any sane woman would knowingly mortgage all her real estate, bind herself and her property to pay ten per cent compound interest, with the right to declare due the

entire principal and a large part of the unearned interest on any default in the payment of interest, without receiving a cent of the proceeds and simply to secure the debts of her husband and of others.

Defendant relies upon the rule that a written instrument should not be set aside on the ground of fraud unless the evidence is "clear and strong," "plain and convincing" or "clear and persuasive." This rule is well established; but it does not mean that the question of the weight of the evidence and the credibility of the witnesses is not for the jury, or that this court will not apply the rule in Hicks v. Stone, 13 Minn. 398 (434), in determining whether a verdict approved by the trial court should stand or be set aside. The evidence of plaintiff was "clear." That it was "convincing," "persuasive," "satisfactory," to the jury, appears from the verdict. In our opinion the jury was justified in believing plaintiff, and we are not justified in refusing to accept its decision.

2. Defendant complains of certain questions asked by plaintiff's attorney during the cross-examination of Irish, and of certain statements made by counsel during the course of such cross-examination. But neither the witness nor defendant's counsel made any objection to the questions or statements at the time, and the trial court was not asked to check or suppress counsel. We hold that there was no abuse of discretion in refusing a new trial based on this ground.

3. Assignments of error Nos. 3, 4, and 5 are without merit. The portions of the charge excepted to were not instructions, but statements of the claims of the parties, and must have been so understood. by the jury. It is not claimed that such statements were inaccurate.

4. Defendant complains of the failure of the court to charge that the proof must be clear and convincing. Conceding that defendant would have been entitled to this instruction, had he requested it, having failed to request it, or to ask to have the instructions given made more definite, there is no ground for reversal here.

We have considered carefully the record, briefs, and arguments, and reach the conclusion that there was no abuse of discretion in denying a new trial, and that there were no errors in the instructions to the jury.

Order affirmed.